IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 4:08CR3105 |
| v. | ) | |
| ROBERT EUGENE TREACLE JR., | ) | REPORT, RECOMMENDATION, AND ORDER |
| Defendant. | ) | |

The defendant filed a motion to suppress all evidence obtained as a result of his detention and the subsequent search of his vehicle on July 24, 2008. Filing No. 19. The defendant claims the detention and vehicle search violated his Fourth Amendment rights, and all evidence derived therefore must be suppressed. He further claims he was illegally questioned in violation of this Fifth Amendment rights, and his responsive statements must be suppressed.

An evidentiary hearing was held on October 21, 2008. The court entered a report, recommendation, and order on October 29, 2008. Filing No. 37. The government filed a motion for clarification of this report and recommendation on October 30, 2008. Filing No. 39. The government's motion explains that the scope of the initial report and recommendation did not address all the factual and legal issues raised by the defendant's motion to suppress. Accordingly, the initial report and recommendation was withdrawn on November 10, 2008, and the case was again taken under consideration. Filing No. 43.

For the reasons discussed below, the court finds the defendant's motion to suppress should be denied.

STATEMENT OF FACTS

On July 24, 2008, at approximately 1:54 a.m., Lincoln Police Officer Jennifer Witzel was dispatched to investigate a citizen's report of a suspicious vehicle parked near the intersection of Eighth and Hill Streets in Lincoln, Nebraska.  According to the report, the vehicle had been parked at that location for approximately ten minutes, but no one had entered or exited the vehicle.

Officer Witzel arrived at the location a few minutes later and noticed a Blue Dodge Aries facing westbound and parked on the north side of Hill Street just east of Eighth Street.  The vehicle was not parked adjacent to the entry of any area residence or business.  See Ex. 101.  When the headlights of her patrol vehicle illuminated the parked vehicle, Officer Witzel noticed an arm in the parked vehicle.  The officer parked her patrol vehicle six to ten feet behind the defendant's vehicle, directed a spotlight toward the vehicle, and activated her overhead lights.

Officer Witzel approached the driver's side of the vehicle to speak with the defendant.  The defendant's vehicle was not running.  Officer Witzel introduced herself and asked the defendant what he was doing.  The defendant responded that he was listening to music.  The officer heard no music playing, and the defendant's vehicle ignition switch was turned completely off.  The CB radio located on the front passenger seat was not transmitting music.  The defendant did not appear intoxicated, and there was no odor of alcohol.

Officer Witzel asked the defendant if he had any identification. The defendant responded, "No." Officer Witzel again asked if the defendant had any documentation with his name on it within the vehicle. The defendant again responded, "No." The officer asked a third time, and the defendant again denied having any identifying documentation.

Officer Witzel asked the defendant for his name and date of birth. The defendant responded "Robert Treacle, Jr.," and provided a date of birth. The officer asked him where he lived, and the defendant responded, "Just up the street." Lincoln Police Officer Jon Kossow then arrived and approached the passenger side of defendant's vehicle.

Officer Witzel resumed questioning, and asked the defendant for his exact address. The defendant responded that he lived near Eighteenth and G Streets. Since defendant's stated residential address was not "just up the street" from his current location, but rather nearly twenty blocks away, Officer Witzel asked the defendant if he knew where he was located. The defendant responded that he was somewhere on Eighth Street but he did not know the cross street. He was actually parked on Hill Street. When Officer Witzel commented that the defendant was not near his home address, the defendant responded, "I'm waiting for a phone call."

The defendant then indicated he may have some document with his name on it, and proceeded to first open the glove box, then shuffle some materials in the vehicle's center console area, and finally look toward the backseat area. However, he made no real attempt to view the contents of the glove box or any other area

in the vehicle. It appeared to Officers Witzel and Kossow that the defendant was only pretending to look for identification.

Officer Witzel suspected the defendant was not being honest about his identity or his reason for being in the area, perhaps because he was trying to hide something or he was the subject of an outstanding arrest warrant. In Officer Witzel's experience, 95% of all persons contacted by the police can produce some form of identification. Officers Witzel and Kossow also noticed that the defendant was very fidgety. He did not make eye contact with Officer Witzel, and he kept looking around, behind himself, and over the officer's shoulder while she spoke with him. The defendant's hands were shaking and he was moving them constantly and oddly; putting them on the steering wheel, on his lap, or holding them up in the air for no apparent reason.

Lincoln Police Officer Vernon arrived and joined Officer Witzel near the driver's side window. With two additional officers now present at the scene, Officer Witzel stepped back from the vehicle a few feet to make a Channel 50 call and determine if there were any warrants or broadcasts for a person named "Robert Treacle, Jr." with his stated date of birth. The Channel 50 operator responded that based on a computer search, an outstanding warrant existed for someone with defendant's name and date of birth. Since the defendant had correctly stated and spelled a name with a corresponding date of birth, Officer Witzel believed the defendant had disclosed his true identity.

While Officer Witzel was on her radio checking for warrants, Officer Kossow questioned the defendant. Officer Kossow had noticed what appeared to be a camouflage rifle bag located under the passenger front seat with approximately one foot sticking out

and visible on the front passenger floorboard.  He asked the defendant what was in the camouflage bag, and the defendant said it was a sword.  When asked why he was carrying a sword in his car, and the defendant responded that the car was a good place to keep it.

Both Officer Kossow and Officer Vernon had noticed the defendant's odd behavior.  The officers knew the defendant had what appeared to be a camouflage rifle bag under his passenger seat, and although the defendant stated the bag contained a sword, the officers had not confirmed that the bag did not actually contain a firearm.  Officers Kossow and Vernon were concerned with officer safety.  Officer Vernon instructed the defendant to step out of his vehicle.  The defendant got out of the vehicle at approximately the same moment Officer Witzel received the Channel 50 operator's report stating the department's computer showed an outstanding warrant for defendant's arrest.

According to Officer Witzel, many Lincoln Police Department officers will, for officer safety, routinely handcuff a contacted person upon receiving a report of an outstanding warrant found in computer records.  However, under LPD policy, the police cannot transport someone to jail based solely on a positive computer search; the warrant must be confirmed.  A warrant is confirmed by retrieving the actual paper warrant from the department's filing cabinet.  Using coded language, the Channel 50 operator asked Officer Witzel if the defendant was near her, and if she wanted the warrant confirmed.  Officer Witzel said, "Yes."

The defendant stood outside his vehicle while Officer Witzel was on the radio with the Channel 50 operator awaiting

confirmation of the warrant. While Officer Witzel waited for the Channel 50 operator's response, Officer Vernon asked the defendant if he had any weapons on his person. The defendant denied having such weapons. Officer Vernon pat searched the defendant, and felt a lump wrapped in plastic in defendant's left front pocket. He asked what was in defendant's pocket. The defendant responded, "A bag." Officer Vernon asked, "A bag of what?" The defendant responded, "Weed."

Officer Vernon retrieved the bag of marijuana, put it on the vehicle roof, and began searching the defendant's vehicle. As Officer Kossow was escorting the defendant to have a seat on the curb behind defendant's vehicle, two events occurred simultaneously; Officer Witzel received the Channel 50 operator's confirmation that the defendant was subject to an arrest warrant, and Officer Vernon located a gun on the vehicle's front console area covered by a camouflage cap. A Lincoln city ordinance bans possession of a concealed firearm or dangerous weapon within the city. Officer Vernon instructed Officer Kossow to handcuff the defendant; Officer Witzel told Officer Kossow to arrest the defendant on the outstanding warrant and handcuff him for transport to jail. Approximately one minute had elapsed between the time Officer Witzel requested confirmation of the warrant and the defendant' arrest.

Dispatch was asked to determine if the defendant had a felony record and to check on the gun found by Officer Vernon. While awaiting a response, Officer Robert Michael Martin, who had recently arrived at the scene, assisted Officer Vernon in searching the vehicle. Officer Martin found a folder under the passenger seat, removed it, and placed it on the trunk. The defendant was seated on the curb watching as Officer Martin

opened the folder and looked at its contents. The documents discussed forming a militia. Officer Martin looked at Officer Kossow, who was standing about six feet away, showed him the folder contents, and said, ""Ooh! What's this?" The defendant then stated he was not starting a militia, and the folder's contents were merely reading materials.

While still at the scene of the officers' initial contact with the defendant, dispatch reported that the defendant was convicted of a felony in 1994. Officer Witzel transported the defendant to jail approximately thirty minutes after first arriving at the scene. The defendant was not questioned en route to the jail. When he arrived at the jail, he was advised of his Miranda rights. He did not waive those rights and was not questioned.

Officers Witzel, Kossow, Vernon, and Martin each arrived at the scene of their contact with the defendant in a marked police vehicle, and they were all in uniform. Although all the officers were armed, no weapons were drawn during their encounter with the defendant.

DISCUSSION

The defendant has moved to suppress "all evidence obtained as a result of the illegal detention of Treacle and the subsequent search of his vehicle on July 24, 2008." Filing No. 19, at CM/ECF p. 1. The defendant argues that he was "illegally detained from the moment he was directed out of his Dodge Aries by Lincoln police officers," (filing no. 20, at CM/ECF p. 6), and all evidence found and statements made thereafter must be suppressed under the Fourth Amendment. He further claims he was

placed "in custody" when he was removed from the vehicle, and his statements during the pat search and vehicle search must be suppressed under the Fifth Amendment. Accordingly, the defendant requests suppression of "all evidence seized from the illegal search of Treacle's Dodge Aries on or about July 24, 2008, and all statements taken from Treacle after being removed from his car. . . ." Filing No. 19, at CM/ECF p. 3.

There is apparently some ambiguity regarding the scope of the defendant's motion. The government's motion to clarify asks the court to specifically determine the admissibility of the evidence found and the statements made by the defendant: 1) while he was still in his vehicle, 2) during the pat search, and 3) after the pat search but before the defendant was transported to jail. Accordingly, this report and recommendation will address the defendant's Fourth and Fifth Amendment arguments for suppression of the evidence obtained during each of these time frames.

A. Evidence Obtained While the Defendant Was in the Vehicle.

Officer Witzel's initial contact with the defendant did not violate the Fourth Amendment. "[P]olice officers are free to approach a citizen on the street and ask if he is willing to answer a few questions." U.S. v. Gray, 213 F.3d 998, 1000 (8th Cir. 2000)(citing Florida v. Bostick, 501 U.S. 429, 434 (1991)). If the citizen voluntarily agrees to answer police questions, the encounter is consensual and does not violate the Fourth Amendment.

Prior to being asked to exit the vehicle, the defendant spoke with two officers; Officer Witzel and Officer Kossow.

These officers were in uniform, but they did not draw weapons, touch the defendant, or use language indicating the defendant was required to respond to their questions. The defendant was not restrained or under arrest. The defendant does not argue that his interaction with the officers while in the vehicle was anything other than consensual, and I conclude that it was consensual. The defendant's statements made during the time he remained in his vehicle should not be suppressed under the Fourth Amendment.

B. Evidence Obtained During the Pat Search.

The defendant argues that although his contact with Officer Witzel was initially consensual, it became an unlawful detention when he was ordered to exit his vehicle and submit to a pat search. He claims that as of that point in time, the officers lacked any reasonable basis for suspecting the defendant was engaged in criminal activity.

Contacts with law enforcement are no longer consensual and become a detention when, in light of all the circumstances surrounding the incident, a reasonable person would not believe he or she was free to go. U.S. v. Drinkard, 900 F.2d 140, 142 (8th Cir. 1990). If, during the course of a consensual police contact, the officer develops a "particularized and objective basis" for suspecting criminal activity may be afoot, the officer may briefly detain the citizen to investigate. The Fourth Amendment is not violated when an officer who reasonably suspects criminal wrongdoing detains a suspect for a reasonable period of time to question the defendant, investigate the circumstances, and determine whether the person is doing something illegal. U.S. v. Ortiz-Monroy, 332 F.3d 525, 528 (8th Cir. 2003). See

also, U.S. v. Olivera-Mendez, 484 F.3d 505, 511 (8th Cir. 2007)("Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention."). "When a team of law enforcement officers is involved in an investigation, the issue is whether all the information known to the team provided 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the investigative stop." U.S. v. Winters, 491 F.3d 918, 921 (8th Cir. 2007).

While it is true Officer Witzel had not yet received the Channel 50 report of an outstanding warrant when the defendant was required to exit his vehicle, the officers did have an objective and reasonable basis to detain the defendant while they checked for outstanding warrants. The defendant was acting very nervous, claimed he had nothing in his vehicle with his name on it, and only pretended to look for such documentation when Officer Witzel kept pursuing the issue. Under these facts alone, a reasonable officer would have suspected the defendant was stonewalling or being evasive in disclosing his true identity in an attempt to avoid being arrested on an outstanding warrant. Detaining the defendant while the officers promptly checked the defendant's stated name to determine and confirm whether an arrest warrant existed was reasonable law enforcement conduct and did not violate the Fourth Amendment.

In addition to appearing reluctant to identify himself, the defendant initially claimed to live near the location of Eighth and Hill Streets, but the specific address he thereafter provided was some twenty blocks away. He stated he was parked on the street listening to music, but no music was playing when the

officer arrived at the driver's window, the vehicle was turned off, and no other source of music was present in the vehicle. He stated he was parked on Eighth Street when he was actually parked on Hill Street. He later stated he was parked there to receive a phone call. The defendant continuously moved his shaking hands from one unusual position and location to another for no apparent reason, and was constantly looking over Officer Witzel's shoulder, behind himself, and to the side as if concerned that someone else was watching, may arrive, or would see him speaking with the officers. He had something under the passenger front seat in what appeared to be a camouflage rifle bag, claimed it was a sword, and provided no plausible explanation for being parked on a residential side street in Lincoln, Nebraska at 2:00 a.m. with a sword in his car.

When considered in the totality, the inconsistencies between defendant's statements and the officers' personal knowledge and observations; his excessive nervousness; his multidirectional darting glances; the lack of identification documents; his statement that he did have a weapon (albeit not a "firearm" or "dangerous weapon" as defined under Lincoln Municipal Code § 9.36.150) capable of causing lethal harm under his passenger seat; and his cryptic explanation for carrying a sword in his car, provided a reasonable basis for the officers to believe that criminal activity was afoot. Specifically, the officers were justified in detaining of the defendant for the reasonable time to investigate whether he was traveling with a rifle under his passenger seat in a city that bans possession of concealed firearms or dangerous weapons, (Lincoln Municipal Code § 9.36.130); whether he had been driving under the influence of some substance; or, in light of the presence of a radio and defendant's constant conduct of looking around during the

encounter, whether he had an associate in the area with whom he was engaged in some sort of joint criminal venture.

The defendant argues that after he was removed from his vehicle, he was illegally pat searched in violation of the Fourth Amendment; that the evidence found and the statements made in response to questioning during the pat search must be suppressed as fruit of the illegal pat search; and that once he was detained outside the vehicle, the defendant was in custody and his responses to custodial interrogation must be suppressed under Miranda.

Law enforcement officers may lawfully pat search a suspect if they have a reasonable, particularized suspicion that the suspect is armed. U.S. v. Hughes, 15 F.3d 798, 802 (8th Cir. 1994)(citing Terry v. Ohio, 392 U.S. 1, 21 (1968). This test for reasonableness is an objective one. "[T}he validity of a protective search 'does not depend upon the searching officer actually fearing the suspect is dangerous; rather, such a search is valid if a hypothetical officer in the same circumstances could reasonably believe the suspect is dangerous.'" U.S. v. Plummer, 409 F.3d 906, 909 (8th Cir. 2005)(quoting U.S. v. Rowland, 341 F.3d 774, 783 (8th Cir. 2003)).

Under the facts presented, based on the defendant's own statement, the officers knew he had a weapon (a sword) in the vehicle. Despite the defendant's statement, a reasonable officer would have believed the weapon in the camouflage bag could be a rifle. The defendant either had no identification or was trying to hide his identity, was apparently waiting on this deserted side street at 2:00 a.m. for something to happen, was looking about during the encounter as if expecting someone else to

arrive, and was continuously moving his hands. Under the totality of these facts, Officers Witzel, Kossow, and Vernon could reasonably have concluded that allowing the defendant to remain in his vehicle while the Channel 50 check was conducted posed a serious risk to officer safety. Officers in their position would be reasonable in concluding the defendant may be armed and dangerous. The officers' conduct of directing the defendant to exit his vehicle and submit to a protective pat search did not violate the Fourth Amendment. See e.g. U.S. v. Brooks, 2008 WL 4022134 (8th Cir. Sept. 2, 2008)(holding officers were justified in requiring a vehicle's occupants to exit and performing pat searches where the officers observed a pocket knife and a sword scabbard in plain view inside the vehicle and had reasonable suspicion that the occupants were involved in a drug transaction, which often involves weapons and violence); U.S. v. Stachowiak 521 F.3d 852 (8th Cir. 2008)(holding officers reasonably believed the defendant may be armed and dangerous where they were told he regularly carried firearms, appeared to be trying to avoid the traffic stop; appeared to reach under the seat to conceal or retrieve something, appeared nervous, and refused to exit the vehicle absent the threat of an aerosol restraint); U.S. v. Payne, 534 F.3d 948, 952 (8th Cir. 2008)(holding officer had reasonable suspicion to conduct a safety frisk after he observed a spring loaded collapsible baton and two pistol magazines in plain view inside the vehicle).

During the pat search, Officer Vernon felt a lump wrapped in plastic in the defendant's left front pants pocket. The officer asked the defendant to identify what was in the baggie, and the defendant said it was "weed," or marijuana. The defendant claims this questioning violated Fifth Amendment rights because he was

in custody and was not given Miranda warnings before being interrogated.

"Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited.'" U.S. v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004)(quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)(emphasis in original)). "The ultimate inquiry to determine custody for Miranda purposes is whether there was a formal arrest, or restraint on freedom of movement of the degree associated with a formal arrest." U.S. v. Flores-Sandoval, 474 F.3d 1142, 1146 (8th Cir. 2007)(quoting U.S. v. Black Bear, 422 F.3d 658, 661 (8th Cir. 2005)).

There are two discrete inquiries essential to the "in custody" determination. The court must consider: 1) the totality of the historical circumstances confronting the suspect; and 2) given those circumstances, whether a reasonable persons would consider their freedom of movement restricted to the degree associated with a formal arrest. LeBrun, 363 F.3d at 720 (citing Thompson v. Keohane, 516 U.S. 99, 112 (1995)). The Eighth Circuit has identified the following factors for the court's consideration in determining whether a suspect was "in custody:"

> (1) whether the suspect was informed that he or she was free to leave or was not under arrest;
>
> (2) whether the suspect possessed unrestrained freedom of movement during questioning;
>
> (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

(4) whether police used strong-arm tactics or deceptive strategies during questioning;

(5) whether the atmosphere of the questioning was police-dominated; and

(6) whether the suspect was arrested at the end of the questioning.

United States v. Galceran, 301 F.3d 927, 929-930 (8th Cir. 2002). This list is not exhaustive, and no one factor is necessarily dispositive. Galceran, 301 F.3d at 930. Rather, the court must look at the totality of the circumstances, with the determination based "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." LeBrun, 363 F.3d at 720 (quoting Stansbury v. California, 511 U.S. 318, 322-23 (1994)).

Contacts between police and citizens in vehicles are typically noncoercive and "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." Berkemer v. McCarty, 468 U.S. 420, 440 (1984). A person is not necessarily in custody for Miranda purposes even if a reasonable person in his or her position would not feel free to leave. "One is not free to leave a Terry stop until the completion of a reasonably brief investigation, which may include limited questioning. But most Terry stops do not trigger the detainee's Miranda rights." U.S. v. Pelayo-Ruelas, 345 F.3d 589, 592 (8th Cir. 2003).

The defendant was not free to leave when he was standing outside his vehicle and during the pat search. However, he was never told he was not free to leave, that he was under arrest, that the pat search was being performed in preparation for his

arrest and transport to jail, or that "his detention would not be temporary." Berkemer, 468 U.S. at 442. As of the time of the pat search, defendant had been detained less than a minute, and likely less than thirty seconds. The defendant may have subjectively believed his arrest was imminent because he knew Officer Witzel was calling to check for warrants, but a reasonable, innocent person in the defendant's position would not have interpreted the circumstances that way. The "only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his situation." Berkemer, 468 U.S. at 442.

At the time of the pat search, the defendant was not "subjected to restraints comparable to those associated with a formal arrest." Berkemer, 468 U.S. at 442. Although the defendant did not initiate the contact with the officers, he did respond to the officers' questions and did not ask to leave. Three officers were present, and the encounter occurred in a somewhat isolated area in the early hours of the morning, but the defendant was not subjected to extensive questioning, the questions were simple and straightforward, and no "strong arm tactics or defensive stratagems" were employed to extract responses. U.S. v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995). The officers were in uniform, but no weapons were drawn. At the time of the pat search, the detention was temporary and brief, and the defendant was in a public place. Under such circumstances, the defendant's freedom was not "curtailed to the degree associated with formal arrest."

The defendant was not "in custody" and was not subjected to custodial interrogation during the pat search when Officer Vernon asked him to identify the contents of the bag in his pocket. See e.g., U.S. v. Pelayo-Ruelas, 345 F.3d 589 (8th Cir. 2003)(denying

the defendant's claim that he was in custody and his Miranda rights were triggered once the DEA Agent removed him from his vehicle and conducted a pat down search because a reasonable person in those circumstances would not have felt free to leave); U.S. v. Klein, 13 F.3d 1182, 1183 (8th Cir. 1994)(holding an intoxicated defendant was not in custody for the purposes of Miranda where officers approached him in a hospital parking lot, asked him for identifying documentation (which he could not provide), asked him how he got to the hospital, and when he admitted he drove, arrested him for DWI); Johnson, 64 F.3d at 1126 (holding defendants were not in custody at the scene of a traffic stop where even though the police initiated the contact, several officers were present, one of the questioning officers was in uniform, and the defendants were questioned in the restrictive confines of squad cars; the defendants were advised they were not under arrest, other passengers were at the scene, they were not formally arrested, handcuffed, or otherwise restrained, the questioning was straightforward, and no strong arm tactics were employed); U.S. v. McGauley, 786 F.2d 888, 890-91 (8th Cir. 1986)(holding limited questioning of a defendant who was approached by four officers in an airport parking lot did not violate Miranda because the defendant was not in custody). The defendant's statement that there was "weed" or marijuana in his pocket should not be suppressed under the Fifth Amendment.

Finally, as to the marijuana found on the defendant's person during the pat search, as set forth in more detail in the prior report and recommendation issued on this motion, (see filing no. 37, at CM/ECF pp. 5-7), this evidence would inevitably have been discovered when the defendant was arrested on the outstanding warrant. The officers had appropriately detained the defendant while they confirmed whether a warrant existed, Officer Witzel

was actively pursuing the answer to that question while Officers Vernon and Kossow performed the pat search and located the marijuana, and even had the defendant not been directed to exit his vehicle and been pat-searched, once the arrest warrant was confirmed, the marijuana would have been found during the search of defendant's person incident to arrest. U.S. v. Thomas, 524 F.3d 855, 859 (8th Cir. 2008)(Colloton, J., concurring)(quoting U.S. v. Glenn, 152 F.3d 1047, 1049 (8th Cir. 1998)).

The defendant was not illegally detained or pat searched after being removed from his vehicle and prior to his arrest. He was not subjected to custodial interrogation during the pat search. The evidence found and the statements made during the pat search should not be suppressed under either the Fourth or Fifth Amendments.

C. Defendant's Statement at the Scene Following His Arrest.

Following defendant's arrest, Officer Martin found a folder in defendant's vehicle that contained documents explaining how to form a militia. Officer Martin stood next to defendant's vehicle, glanced over the documents, and then turned to Officer Vernon, who was standing six feet away, showed him the documents, and said, "Ooh. What is this?" The defendant, who was seated at the curb, said he was not starting a militia, and that the documents were just reading materials. The defendant seeks to suppress this statement as the fruit of the officers' Fourth Amendment violations, and under the Fifth Amendment.[1]

[1]To the extent the defendant may be arguing that his statement about the militia materials must be suppressed as fruit of the officers' unlawful custodial interrogation during the pat search, this argument must fail. The defendant's statements

The defendant's militia statement is not subject to suppression as fruit of any Fourth Amendment violation because the defendant's Fourth Amendment rights were not violated.  As of the time the defendant was under arrest, handcuffed, and seated on the curb, he was "in custody."  However, Officer Martin's commentary/question about the documents in the militia folder was not directed at the defendant, but at Officer Vernon, and a reasonable officer in Officer's Martin's position would not know that his comment to Officer Vernon would likely elicit an incriminating response from the defendant.  Holman v. Kemna, 212 F.3d 413, 417 (8th Cir. 2000)(holding interrogation includes not only express questioning by the officer, but also any words or actions which police should know are reasonably likely to elicit an incriminating response from the suspect).

A reasonable person in defendant's position would have known he was not being questioned; Officer Martin was showing the folder's contents to Officer Vernon, and his eye contact and voice were directed at Officer Vernon and not down at the defendant who was sitting on the curb.  The defendant commented in response to Officer Martin's statement to Officer Vernon.  This comment was voluntary, and not in response to interrogation by Officer Martin.  Statements voluntarily made by a defendant while in custody are not protected by the Fifth Amendment or the exclusionary principles of Miranda.  Butzin v. Wood, 886 F.2d

---

while in his vehicle or during the pat search were not coerced.  Even assuming the defendant was entitled to Miranda warnings during these prior time frames, the simple failure to administer the Miranda warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, does not render defendant's subsequent voluntary statements inadmissible as fruit of the Miranda violation.  Oregon v. Elstad, 470 U.S. 298, 309 (1985).

1016, 1018 (8th Cir. 1989). The defendant post-arrest statement about the militia materials should not be suppressed under the Fifth Amendment.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, that the motion to suppress, filing no. 19, be denied in all respects.

The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

IT FURTHER HEREBY IS ORDERED: Trial is set to commence at 9:00 a.m. on February 2, 2009, for a duration of three trial days before the Honorable Richard G. Kopf in Courtroom 1, United States Courthouse and Federal Building, 100 Centennial Mall North, Lincoln, Nebraska. Jury selection will be at the commencement of trial.

DATED this 10th day of December, 2008.

BY THE COURT:

s/ David L. Piester

David L. Piester
United States Magistrate Judge